UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06-cv-417-RJC

| | |
|---|---|
| DAVID C. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| METROPOLITAN LIFE INSURANCE | ) |
| COMPANY; BANK OF AMERICA | ) |
| CORPORATION; BANK OF | )   **ORDER** |
| AMERICA LONG TERM DISABILITY | ) |
| BENEFITS PLAN; and BANK OF | ) |
| AMERICA GROUP BENEFITS | ) |
| PROGRAM, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**THIS MATTER** is before the Court upon the parties' cross motions for summary judgement (Doc. Nos. 23 & 28), related memoranda (Doc. Nos. 24, 29, 31, 32, & 34), Defendants' motion in limine (Doc. No. 35), Plaintiff's response (Doc. No. 37) and the Magistrate Judge's memorandum and recommendation ("M&R") (Doc. No. 40). Plaintiff filed an objection to the M&R (Doc. No. 41) and Defendant filed a response (Doc. No. 43), which are now before the Court. For the reasons that follow, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

**I.     FINDINGS OF FACT**

Plaintiff David C. Johnson brings this action to recover Long Term Disability ("LTD") benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). The parties made no specific objections to the findings of fact contained in the Magistrate Judge's M&R. After a careful review of the record in

1

this case, the Court adopts the factual findings made by the Magistrate Judge on pages 13 through 22 of the M&R filed on August 26, 2008, for purposes of this Order.

**II.   STANDARD OF REVIEW**

A district court must make "a de novo determination of those portions of the [magistrate judge's] report or specific proposed findings or recommendations to which objection is made.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28 U.S.C. § 636(b)(1)). Accordingly, the Court has conducted a de novo review of those portions of the Magistrate Judge's decision specifically objected to by the defendant and has conducted a careful review of the remainder for clear error.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson

2

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. However, "a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id., 477 U.S. at 252.

## III. DISCUSSION

### A. Abuse of discretion standard of review

#### 1. Whether the abuse of discretion standard is the proper standard of review

Johnson objects to the Magistrate Judge's use of an abuse of discretion standard of review. The Magistrate Judge relied solely on the Summary Plan Description ("SPD") to determine the applicable standard. Johnson argues that the SPD is insufficient to confer discretion absent a valid grant of discretion in the Plan. After Johnson filed its objections, Defendants provided the Court with a full copy of the Plan for review.

When reviewing a denial of benefits claim under § 1132(a)(1)(B) of ERISA, a court applies a de novo standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). An ERISA plan can confer discretionary authority in two ways: "(1) by language which expressly creates discretionary authority, and (2) by terms which create discretion by implication." Woods v. Prudential Life Ins. Co, 528 F.3d

320, 322 (4th Cir. 2008) (internal quotation marks omitted). "[R]egardless of whether discretion is created expressly or implicitly, [the Fourth Circuit has] consistently required that the plan manifest a clear intent to confer such discretion." Id.

The Bank of America Group Benefits Program (the "Plan") states that "[t]he Committee shall have discretionary authority to determine eligibility for and to construe the terms of the Group Benefits Program." (Doc. No. 45-2 at 6). The "Committee" is defined as the Bank of America Corporation Corporate Benefits Committee. (Doc. No. 45-2 at 2). The Plan also gives the Committee the discretionary authority to "delegate responsibility for the operation and administration of the Group Benefits Program, including the authority to review claims." (Doc. No. 45-2 at 6). The Bank of America Associate Handbook, which is the SPD for the Plan, provides that the Committee, as plan administrator, "has delegated to the Benefits Appeals Committee and insurance companies or service providers described in this paragraph, discretionary authority to determine eligibility for benefits and construe the terms of the applicable plan and resolve all questions relating to claims for benefits under the plan." (Doc. No. 25-2 at 12). The Associate Handbook identifies MetLife as the insurance company providing disability income benefits under the Plan. (Doc. No. 29-9 at 28).

Here, the Plan grants discretionary authority to the plan administrator, and the SPD provides that the plan administrator has delegated discretionary authority to other fiduciaries. The terms of the Plan and SPD do not conflict. Cf. Lynch v. Provident Life & Accident Ins. Co., No. 6:02-3187-26, 2004 U.S. Dist. LEXIS 29347, at *5 (D.S.C. May 13, 2004) (holding that even if the terms of the SPD and Plan conflict, the court applied an abuse of discretion standard because plaintiff could not show that he was prejudiced by the conflict). Both documents manifest a clear intent to confer discretionary authority to a plan administrator.

Plaintiff objects that defendants have not cited any specific document where the Committee makes the delegation of discretionary authority to the Benefits Appeals Committee. Regardless, the determination of the appropriate standard of review under ERISA hinges on the plan's grant of discretion, and the Court finds no precedent to support Plaintiff's argument that the delegation document is relevant to that determination. Therefore, based on the language of the Plan and the SPD, the Court will apply an abuse of discretion standard.

> **2.  Whether the M&R erred in misstating the abuse of discretion standard of review**

Johnson also objects to the sentence in the M&R which states, "The undersigned will, therefore, apply an abuse of discretion standard and take into account, as but one factor, the financial conflict of interest in determining whether MetLife's factual conclusions find support in the administrative record." (Doc. No. 40 at 12-13). Johnson contends that this sentence "implies that the Magistrate aimed to search the record for facts to find support for MetLife's decision and determine whether he thought it was reasonable, rather than properly determining if MetLife made a reasoned, principled decision supported by substantial evidence sufficient to overcome its conflict of interest." (Doc. No. 41 at 18).

Under an abuse of discretion standard, an administrator's decision "will not be disturbed if it is reasonable, even if this court would have come to a different conclusion independently." Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997). To be reasonable, the decision must be "the result of a deliberate principled reasoning process" and be "supported by substantial evidence." Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997). When determining whether a decision was reasonable, a court may consider the following eight factors:

5

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 342-43 (4th Cir. 2000).

Despite the terminology in the M&R, the Magistrate Judge did not merely search the record to find facts to bolster MetLife's decision. Throughout the forty page M&R, the Magistrate Judge carefully addressed each of the eight factors to be considered under an abuse of discretion standard to determine if MetLife's decision is based on substantial evidence that is the result of a "deliberate, principled reasoning process." Brogan, 105 F.3d at 161. The Magistrate Judge ultimately concluded that "the decision of the Plan administrator was the product of a reasoned and principled decision making process based upon adequate materials and inquiry." (Doc. No. 40 at 37). The Magistrate Judge's analysis and conclusion is in accord with the requirements of a court's review of MetLife's decision to deny LTD benefits.

### B. Conflict of Interest

#### 1. Whether the M&R erred by failing to modify the standard of review because of MetLife's conflict of interest

Johnson objects that the Magistrate Judge failed to modify the standard of review in light of MetLife's conflict of interest.

When a plan administrator also serves as the insurer of the Plan, a conflict of interest exists. Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2349 (2008). The conflict of interest does not

6

change the standard of review from deferential review to a de novo review, or some other hybrid standard. Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 358 (4th Cir. 2008). Rather, a court must take the conflict of interest into account only as "one factor among many" that is relevant in deciding whether the administrator abused its discretion. Id. (quoting Glenn, 128 S. Ct. at 2351). According to the Supreme Court:

> In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance. The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration.

Glenn, 128 S.Ct. at 2351.

As explained in the M&R, there was a conflict of interest because MetLife is both the plan administrator and the insurer that would fund any award of LTD benefits. Johnson objects that the Magistrate Judge failed to modify the standard of review to lessen the Court's deference to MetLife's decision in light of the conflict of interest. Johnson argues that Glenn does not prevent a court from modifying a standard of review by lessening the court's deference to the administrator's decision. To support his argument, Johnson cites to the language in Glenn that states that the Court was not providing a "detailed set of instructions." Id. at 2352. Johnson requests that the Court rely on Fourth Circuit cases decided before Glenn, which held that a court must lessen the defense to the administrator's decision to the degree necessary to neutralize any untoward influence resulting from a conflict of interest. See, e.g., Stup v. UNUM Life Ins. Co., 390 F.3d 301, 307 (4th Cir. 2004).

Glenn altered the Fourth Circuit's approach to reviewing discretionary decisions by ERISA administrators. "[B]efore *Glenn*, when we found a conflict of interest, we applied a 'modified' abuse-of-discretion standard that reduced deference to the administrator to the degree necessary to neutralize any untoward influence resulting from the conflict of interest[,] . . . [but] after *Glenn*, . . . courts are to apply simply the abuse-of-discretion standard for reviewing discretionary determinations by that administrator, even if the administrator operated under a conflict of interest." Champion, 550 F.3d at 359 (addressing argument to use pre-Glenn decisions). Accordingly, the Magistrate Judge properly relied on Glenn and post-Glenn decisions in determining how a conflict of interest would affect the abuse of discretion standard of review.

### 2. Whether the M&R erred in providing little consideration to MetLife's conflict of interest

The Magistrate Judge acknowledged that it would consider the conflict of interest as a factor in its consideration, and concluded that "[t]he court has found no indicia, however, that such potential financial obligation in any [way] colored MetLife's decision in this matter." (Doc. No. 40 at 36). In addressing the conflict of interest, the Magistrate Judge noted that (1) MetLife provided Johnson's physician with a copy of Dr. Kelly's opinions; (2) MetLife sought the opinion of a second specialist when Johnson's physician provided his supplemental opinion; (3) there was no evidence that any doctor sold his or her professional integrity or committed perjury; and (4) the consultative physician gave Johnson and his physician other avenues to explore to explain the link between Johnson's cirrhosis and his fatigue.

#### a. Short term disability

Johnson objects to the Magistrate Judge's weight of the conflict of interest. Johnson argues

8

that MetLife adopted seemingly inconsistent positions that are financially advantageous; MetLife approved Johnson's request for short term disability ("STD") benefits but did not approve his request for LTD benefits because LTD benefits are paid by MetLife whereas STD benefits are paid from Bank of America's funds.

MetLife made its decisions based on the information it had at that time, and its decisions changed as it gathered more information. MetLife denied the STD claim twice because Johnson was receiving no "treatment from a licensed physician on a continuing basis," as required under the STD Plan. MetLife later granted STD benefits when Dr. Adcock stated that Johnson was being "monitored closely" as a possible candidate for a liver transplant. MetLife made a different determination once a medical consultant reviewed Johnson's records and found that Johnson had not linked his subjective complaints of fatigue with an objective medical cause. MetLife's decision to deny LTD benefits to Johnson was based on evidence from a medical consultant that Johnson had not shown a link between his fatigue and the medical cause. MetLife's denial of LTD benefits was based on new evidence in Johnson's medical record; the denial of benefits was not based on an improper motivation on the part of MetLife, amounting to a conflict of interest. See Wright v. R. R. Donnelley & Sons Co. Group Benefits Plan, 402 F.3d 67, 76 (1st Cir. 2005) ("[The plan administrator] granted STD benefits to [plaintiff] when it did not have a financial stake in the payment of benefits and then denied benefits to [plaintiff] as the time approached when [plaintiff] would be financially liable. After a thorough review of the evidence, however, the district court found that it was apparent that the decision to terminate benefits was based on the evolving state of plaintiff's medical record.")

b.    Unpaid Medical Leave

Johnson objects that the Magistrate Judge ignored a second conflict of interest because MetLife approved unpaid medical leave but denied LTD benefits. According to the Magistrate Judge, "Plaintiff has attempted to contrast the decision on LTD benefits with a determination which allowed him to take unpaid medical leave, a contrast which cannot be made inasmuch as the goals, purpose, and requirements for obtaining unpaid medical leave differ significantly from LTD benefits." (Doc. No. 40 at 27 n.2).

Johnson asserts that a person must be considered medically disabled to qualify for either LTD or unpaid medical leave. To support his argument, Johnson cites to language in the SPD which states that an employee may continue unpaid medical leave "up to 24 months from the initial date of disability, provided you remain medically unable to work." (Doc. No. 29-7 at 14). In this case, Johnson had his medical leave extended beyond 24 months. In other words, Johnson must have been disabled when he first received medical leave. Based on the language in the SPD, Johnson argues that the disability standard for unpaid medical leave is more narrow than the LTD policy's definition of disability.

Johnson misconstrued the terms of the Plan by not providing the full quote from the SPD. The full quote of the SPD states, "If your medical condition extends beyond 26 weeks and you do not qualify for LTD benefits, your medical leave can continue up to 24 months from the initial date of disability, provided you remain medically unable to work." (Doc. No. 29-7 at 14). In this section of the SPD, MetLife is providing medical leave up to 24 months for a person who does not qualify for LTD benefits. The SPD allows a person, such as Johnson, who is not eligible for LTD benefits to receive unpaid medical leave. This section of the SPD does not address the issue of how to

qualify for LTD benefits. A conflict of interest does not exist merely because MetLife provides a plan participant unpaid medical leave without LTD benefits, as stated in the SPD.

      c.   Social Security benefits

Johnson also argues that MetLife adopted inconsistent positions that are financially advantageous concerning long term benefits and social security benefits.

In <u>Glenn</u>, the Supreme Court held that a conflict of interest existed when the plan administrator referred the plan participant to counsel to assist her in arguing to the Social Security Administration that she could do no work, and then ignored the agency's finding in concluding that Glenn could in fact do sedentary work. 128 S. Ct. at 2352. The plan administrator's "seemingly inconsistent positions were both financially advantageous" because the plan administrator received the Social Security disability benefits as an offset to the plan benefits. <u>Id.</u>

Unlike the plan administrator in <u>Glenn</u>, MetLife did not refer Johnson to counsel to assist him in applying for Social Security Disability ("SSD") benefits. MetLife was not even aware of Johnson's SSD claim until Johnson inquired with MetLife on August 29, 2005 about whether he should appeal his SSD denial. Last, MetLife's denied the LTD benefits in 2005, three years before the Administrative Law Judge for the Social Security Administration approved Johnson's claim for disability. Therefore, MetLife was not faced with the issue of having to explain why its decision differed from the ALJ on the question of disability. <u>See</u> <u>Brown v. Hartford Life Ins. Co.</u>, 301 Fed. App'x. 772, 776 (10th Cir. 2008) (unpublished) ("A reviewing court should have factored the inconsistency created by [the plan administrator's] instructing [the plan participant] to apply for SSD and reaping the benefits of his successful determination, then summarily rejecting the evidentiary value of that determination almost without comment, into its determination of whether

[the plan administrator] acted arbitrarily and capriciously in denying benefits."); Bennett v. Kemper Nat'l Servs., 514 F.3d 547, 554 (6th Cir. 2008) (same). MetLife was not seeking to benefit from the ALJ's decision; in fact, MetLife did not even know that Johnson was filing an SSD claim until after the claim was initially denied. Therefore, MetLife's decision to deny LTD benefits before the ALJ granted Johnson's SSD does not provide evidence of a conflict of interest.

    **C.    Reasonableness of MetLife's Decision**

        **1.    Whether MetLife's citation to the incorrect definition of disability in the denial letters is per se unreasonable**

Johnson objects to the M&R's lack of discussion about the erroneous definition of disability included in MetLife's July 13, 2005 letter of denial and October 20, 2005 letter affirming the denial. Johnson argues that MetLife's citation to the erroneous definition is per se unreasonable.

The Fourth Circuit has explained that "not all procedural defects will invalidate a plan administrator's decision." Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 235 (4th Cir. 1997). "[S]ubstantial compliance with the spirit of the regulation will suffice." Id. Accordingly, citation to the wrong definition of disability in the denial letters is not per se unreasonable. See Havens v. Metro. Life Ins. Co., No. 1:05-cv-1136, 2006 U.S. Dist. LEXIS 57123, at *21-22 (W. Va. Aug. 14, 2006) ("Citing the incorrect standard in two [denial] letters does not nullify MetLife's [disability] determination."). But see Mitchell v. Metro. Life Ins. Co., 523 F. Supp. 2d 1132, 1145 (C.D. Pa. 2007) (holding that the plan administrator's application of a more stringent disability definition constituted an abuse of discretion).

In both denial letters, the definition of disability states that "you are unable to perform each of the material duties of your own occupation." (Doc. No. 30-2 at 24, 40). On the other hand, the

SPD states that "you are unable to earn more than 80% of your predisability earnings or indexed predisability earnings at your own occupation for any employer in your local economy." (Doc. No. 29-6 at 18). Both parties agree that the definition in the SPD is the correct definition of disability.

MetLife argues that it applied the correct disability definition even though it admits to citing the incorrect definition. To support its argument, MetLife points to language in the conclusion of its final decision letter of October 20, 2005, "the documentation submitted for review has failed to provide medical evidence of a severity of impairment that would preclude you from gainful employment on a full-time basis performing within your own occupation." (Doc. No. 30-2 at 27).

MetLife's citation to the wrong definition of disability is not unreasonable per se. Johnson has not shown that he was prejudiced by Metlife's mistake or that the difference in definitions resulted in MetLife's denying his claim. Therefore, MetLife did not abuse its discretion by mistakenly citing the wrong disability definition in the denial letters.

### 2. Whether decision was based on principled, reasoned decisionmaking process

Last, Johnson objects to the Magistrate Judge's conclusion that MetLife's decision was based on reasoned and principled decision making. See Booth, 201 F.3d at 342-43 (listing reasoned and principled decision making process as a factor considered under the abuse of discretion standard).

The Magistrate Judge listed eleven events that occurred in the processing of plaintiff's LTD claims. During the process, Dr. Kathleen Kelly reviewed Johnson's file and concluded that the medical information does not support a finding of total disability even though Johnson does have cirrhosis. Although Johnson complained that he suffered from fatigue as a result of his cirrhosis,

13

Dr. Kelly concluded that other forms of fatigue must be investigated.

In the July 13, 2005 letter to Johnson, MetLife wrote that other forms of fatigue must be investigated, including a hormonal, pulmonary or psychiatric cause. (Doc. No. 30-3 at 2). MetLife stated that there is no documentation of Johnson's impairment. MetLife also stated that fatigue was mentioned throughout the file in office visits dating back to 2003, yet Johnson was able to work at that time. MetLife stated that the medical records did not substantiate Johnson's claim that he was unable to work at his occupation. MetLife provided Johnson a copy of Dr. Kelly's opinion.

Dr. Adcock sent a letter on September 1, 2005 stating that Johnson had undergone several evaluations to determine the cause of his fatigue, including a CAT scan of his abdomen. Dr. Adcock concluded that his cirrhosis was the cause of Johnson's fatigue.

MetLife referred Johnson's file to Dr. Manoj Mehta, an Independent Physician Consultant Board Certified in Gastroenterology and Internal Medicine. Dr. Mehta issued an opinion, recommending that Johnson has cirrhosis but that there was no clinical findings to show functional restrictions or limitations. The only potential limitation was caused by fatigue, but Johnson's fatigue had not been objectively qualified or linked to Johnson's cirrhosis.

MetLife issued its decision on October 20, 2005, advising Johnson that it upheld its decision to deny his claim for LTD benefits. In the letter, MetLife stated that Johnson was on Xanax for panic attacks and that the medication might be contributing to Johnson's feelings of fatigue. The letter classified Johnson as class A cirrhotic, explaining that there is no reason to expect impairment based on this finding. MetLife provided Johnson a copy of Dr. Mehta's opinion.

As explained in the M&R, MetLife engaged in a decision making process that was reasoned and principled. There is no indication that MetLife ignored evidence of Johnson's disability or

distorted statements made by his treating physician. There is no evidence that Metlife performed an unreasonable interpretation of the medical evidence. MetLife based its decisions on reasoned medical opinions and even provided Johnson's physician, Dr. Adcock, a copy of the consultative opinions so that he could understand why his recommendation was not followed.

Johnson argues that it was unreasonable for MetLife to rely on the opinion of Dr. Mehta, an independent consultant, because the opinion contained numerous errors and cannot be supported by substantial evidence. Dr. Mehta is Board Certified in Internal Medicine and Gastroentology and specializes in hepatologic disorders. Dr. Mehta considered each of the reports relied upon by Dr. Adcock and concluded that the medical record did not support the finding that Johnson was impaired. MetLife acted reasonably in relying on the opinions of the two independent consultants. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003) ("[P]lan administrators are not obliged to accord special deference to the opinions of treating physicians.").

Johnson cites to Donovan v. Eaton Corp., 462 F.3d 321 (4th Cir. 2006) for the proposition that an insurer cannot ignore a claimant's statements about subjective symptoms. In this case, MetLife did not ignore Johnson's statements about his fatigue. Instead, MetLife acknowledged that Johnson complained of fatigue, although Johnson seemed capable of working while fatigued. MetLife explained that there was no objective medical evidence linking his fatigue to the cirrhosis. Additionally, the medical evidence of Johnson's cirrhosis shows that his condition has improved over the years, he had been taken off the transplant list, and the results of all laboratory testing for liver function have been normal. MetLife acted reasonably in taking into account the evidence as a whole, including Johnson's own self-reported statements of fatigue.

Finally, Johnson claims that the M&R failed to address the analogous case of White v. Sun

Life Assurance Co., 488 F.3d 240 (4th Cir. 2007). Johnson claims that the Fourth Circuit in <u>White</u> held that providing objective evidence of an underlying condition suffices to provide objective evidence of the expected symptoms of that condition.

Johnson misconstrues <u>White</u>. In <u>White</u>, the Fourth Circuit held that there was objective evidence that the plaintiff suffered an impairment because surgery revealed a "severe physical deformity consistent with [the plaintiff's] complaints of pain in the lower back, buttocks, and legs." 488 F.3d at 255. Unlike the plaintiff in <u>White</u>, Johnson produced no objective evidence of fatigue. Johnson's physicians did not perform any test to determine physical dexterity, fatigability, duration, or muscle strength. Therefore, the holding and facts of <u>White</u> do not control the outcome in this case.

**IV.     CONCLUSION**

The Court finds that abuse of discretion is the proper standard to review MetLife's decision to deny Johnson LTD benefits. In applying an abuse of discretion standard of review, the Court finds that MetLife's decision to deny benefits was reasonable.

**IT IS THEREFORE ORDERED** that:

1. Defendant's Motion for Summary Judgment (Doc. No. 23) is **GRANTED**;

2. Plaintiff's Motion for Summary Judgment (Doc. No. 28) is **DENIED**;

3. Defendant's Motion in Limine (Doc. No. 35) is **DENIED AS MOOT**; and

4. Plaintiff's case is **DISMISSED**.

Signed: September 15, 2009

Robert J. Conrad, Jr.
Chief United States District Judge